The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PLAY VISIONS, INC., a Washington corporation, | No. C09-1769-MJP |
| Plaintiff, | MOTION FOR SANCTIONS FOR PLAINTIFF'S DISCOVERY MISCONDUCT |
| v. | |
| DOLLAR TREE STORES, INC., a Virginia corporation and GREENBRIER INTERNATIONAL, INC., a Delaware corporation, | NOTE ON MOTION CALENDAR: March 11, 2011 |
| Defendants. | *Oral Argument Requested* |

MOTION FOR SANCTIONS
(C09-1769-MJP)
DWT 16625062v3 0068366-000011

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................... 1

II. FACTUAL BACKGROUND .................................................................................. 1

    A. Plaintiff Fails to Issue a Litigation Hold and Fails to Suspend its Document Destruction Practices. ................................................................. 1

    B. Plaintiff Falsely Certifies it "Does Not Have Records" on the First Sale of Relevant Products or Authorship of the Copyright. ................................. 2

    C. Plaintiff Reveals Thousands of Relevant, Unproduced Paper Documents and Falsely Certifies that Electronic Documents "Do Not Exist." ................. 3

    D. Dollar Tree Learns Plaintiff Has Done Nothing to Comply with its Discovery Obligations. ......................................................................... 4

    E. Plaintiff Files Three Summary Judgment Motions While Withholding 43,000 Invoices, "Eight Discs of Data," and Thousands of Critical Emails. ......... 5

    F. Plaintiff Reveals "Eight Discs of Data" Containing Highly Relevant and Responsive Documents. ......................................................................... 7

III. ARGUMENT ........................................................................................................... 8

    A. Legal Standard and Authority for Discovery Sanctions. ............................ 8

    B. The Court Should Sanction Plaintiff and its Counsel. ................................ 9

IV. CONCLUSION ..................................................................................................... 12

MOTION FOR SANCTIONS
(C09-1769-MJP) — i
DWT 16625062v3 0068366-000011

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

## I. INTRODUCTION

At the start of discovery in June 2010, Dollar Tree requested all documents on the key aspects of Plaintiff's patent, copyright, and trademark claims: (1) validity of the Asserted Patents, including the date of first "offer for sale" of relevant products; (2) authorship and creation of the work covered by the Asserted Copyright; and (3) the goods associated with the Asserted Trademarks and their first use. For over seven months, Plaintiff improperly and purposefully withheld over 51,000 responsive documents—including documents that invalidate at least three of its patents—while deceiving Dollar Tree by affirmatively (and falsely) certifying both in its discovery responses and in correspondence that these documents did not exist. Plaintiff improperly withheld these documents while simultaneously moving for summary judgment, opposing Dollar Tree's motion for a continuance, and telling the Court (untruthfully) that it had produced all relevant documents. Plaintiff systematically manipulated, ignored, and violated the Federal Rules and its obligations as a Federal litigant.

Dollar Tree does not bring this motion lightly.[1] Plaintiff's egregious and repeated discovery abuses and its flagrant disregard for the Federal Rules caused Dollar Tree substantial and needless expenses. Dollar Tree will not oppose Plaintiff's pending motion to dismiss its case with prejudice (Dkt. 118), but it should not be forced to pay for Plaintiff's discovery abuses. Dollar Tree therefore requests that the Court sanction Plaintiff and its counsel and order an award equal to the attorney's fees caused by Plaintiff's misconduct.

## II. FACTUAL BACKGROUND

### A. Plaintiff Fails to Issue a Litigation Hold and Fails to Suspend its Document Destruction Practices.

On December 11, 2009, Plaintiff filed this case. At no time prior to filing this suit or the following 14 months has Plaintiff issued a litigation hold notice, or otherwise taken ***any*** steps to ensure the preservation of relevant information. Goldmark Decl., Ex. A (Rule 30(b)(6) Deposition of Jay Keron ("Dep.")), 14:24–15:15. Plaintiff testified it has done

---

[1] The undersigned has never filed a motion for sanctions in his 27 years of practice before this Court.

MOTION FOR SANCTIONS
(C09-1769-MJP) — 1
DWT 16625062v3 0068366-000011

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

"[n]othing out of the course of ordinary business" to preserve relevant information. *Id.* 15:16–21. Plaintiff also testified that key custodians routinely "purged their email system" and vendor product quotes (offers for sale) have "all been purged." *Id.* 55:24–56:4, 97:19–23. Further, Plaintiff's counsel did not issue a litigation hold letter, did not notify custodians of their preservation obligations, and did "nothing" to become familiar with Plaintiff's document retention and destruction practices. *Id.* 18:14–19:16. Plaintiff's counsel also provided *no* assistance to Plaintiff in either (1) understanding the documents and information sought by Dollar Tree's various discovery requests or (2) searching for and identifying responsive documents. *Id.* 48:2–14, 70:21–71:10, 83:16–20, 105:16–19, 109:22–25, 112:2–5.

### B. Plaintiff Falsely Certifies it "Does Not Have Records" on the First Sale of Relevant Products or Authorship of the Copyright.

On June 7, 2010, Dollar Tree served its first set of discovery requests. Dkt. 83-1 at 1–25.[2] Because an "offer for sale" of any product practicing a patent more than one year before its priority date invalidates that patent, Dollar Tree focused its Requests for Production ("RFPs") and Interrogatories ("ROGs") on this issue. For example, RFP No. 11 sought:

> [A]ll Documents concerning the first manufacture, use, sale, offer for sale, or placing on sale of any product covered by or made in accordance with one or more claims of the Asserted Patents.

*Id.* at 7. Similarly, ROG No. 3, asked Plaintiff to identify "the date and location of the first offer for sale" of any product practicing the patents. *Id.* at 22.

Plaintiff served its discovery responses on July 7, 2010, producing almost none of the documents and information sought. Plaintiff instead certified:

> Currently, Play Visions *does not have records* of the first publication nor of the offer for sale of any of the products in question …. Because there are no documents that set forth first sales in Play Visions' control, it asserts that the presence of items with the following names in the produced catalogs would be the best answer to the question posed herein.

*Id.* at 55 (ROG No. 11 Answer) (emphasis added). Plaintiff now admits this certification was "inaccurate." Dep. 64:15–65:8.

---

[2] For ease of reference, Dollar Tree cites the docket number ("Dkt.") for all previously filed documents.

MOTION FOR SANCTIONS
(C09-1769-MJP) — 2
DWT 16625062v3 0068366-000011

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Plaintiff's July 7 production contained no emails with its toy vendors, no internal emails whatsoever, and no emails on the design or development of its products, or of its six patents, two trademarks, or copyright. *See* Dkt. 83-1 at 72–76. Plaintiff admits that it performed no searches for electronically stored information ("ESI") and performed no searches on its email system. Dep. 46:20–49:5. Plaintiff further admits that it conducted no search on its "accounting database for first purchase and/or first sale" of relevant products (i.e., documents responsive to RFP No. 11) until the end of October or early November of 2010, three months after it certified that no such documents existed. *Id.* 50:1–51:5.

Dollar Tree also requested key documents on the validity of the copyright, documents concerning the "creation development, editing, or authorship of the works which are the subject of the Asserted Copyright." Dkt. 83-1 at 10. Plaintiff again produced nothing, claiming no such documents existed. *Id.* at 34–40 (RFP No. 28 Response).

After reviewing Plaintiff's July 7 production, Dollar Tree sent a letter on August 10 that specifically identified fourteen deficient aspects of Plaintiff's discovery responses. *Id.* at 72–77. On August 12, Dollar Tree again wrote Plaintiff, explaining that it had failed to address, much less cure, at least twelve deficiencies and requested that it do so. *Id.* at 81. On September 21, Dollar Tree wrote Plaintiff, summarizing the twelve open issues and again requesting a formal response. *Id.* at 86. Plaintiff responded that same day, declaring: "I have already explained to you that we have ***withheld nothing***."[3] *Id.* at 90 (emphasis added).

### C. Plaintiff Reveals Thousands of Relevant, Unproduced Paper Documents and Falsely Certifies that Electronic Documents "Do Not Exist."

On September 21, 2010, Dollar Tree served its second discovery requests to clarify the specific documents it sought: "all bills of lading, quote sheets, packing lists, invoices, and purchase orders" for products practicing the patents. Dkt. 83-1 at 92–106 (RFP No. 48).

On October 21, 2010, Plaintiff responded and revealed—despite its repeated assurances otherwise—that it possessed tens of thousands of responsive paper documents, but

---

[3] Unless otherwise noted, Dollar Tree refers to Plaintiff and Plaintiff's counsel, Mark Lorbieki, interchangeably.

MOTION FOR SANCTIONS
(C09-1769-MJP) — 3
DWT 16625062v3 0068366-000011

had neither reviewed nor produced them. *Id.* at 108–19. Rather than produce responsive documents, however, Plaintiff stated it would make "relevant records" available for Dollar Tree's "inspection." *Id.* at 110, 117. In response to each of Dollar Tree's requests, Plaintiff further "certifie[d]" that "all relevant records … are kept ***only and solely in paper format*** in a storage room." *Id.* (RFP 48 & 49 Responses, ROG 15 Answer) (emphasis added). Plaintiff now concedes, four months later, that these certifications were "incorrect." Dep. 79:15–80:3.

The next day, Plaintiff boldly assured Dollar Tree: "Because Play Visions still handles ***all*** of its purchase orders and deliveries by ***paper means***, the extent of this disclosure is exhaustive and selected to moot all of your prior complaints about legibility or completeness of the records." Dkt. 119 at 5 (emphasis added). Plaintiff further stated: "I can assure you that the collection is complete. If the documents you seek are not there, it is because they ***do not exist***." *Id.* (emphasis added). Plaintiff now concedes these statements were also untrue. Dep. 83:21–84:4.

D.  **Dollar Tree Learns Plaintiff Has Done Nothing to Comply with its Discovery Obligations.**

In light of Plaintiff's newly-discovered trove of relevant paper documents, Dollar Tree agreed to meet at Plaintiff's offices on November 10 to inspect relevant records. Shortly before that meeting, Plaintiff revealed that the "relevant records" for inspection consisted of roughly 360 "bankers" boxes full of documents and provided photographs showing the vast volume of documents that had neither been reviewed nor produced. Dkt. 83-1 at 121–23.

On November 10, 2010, Dollar Tree's counsel visited Plaintiff's warehouse and memorialized the substance of the visit in a November 15 letter to Plaintiff. *Id.* at 129–33. The November 10 visit revealed numerous undisputed facts about Plaintiff's noncompliance with its discovery obligations. Dollar Tree learned that responsive documents resided somewhere within 360 boxes in Plaintiff's warehouse but Plaintiff had not reviewed, much less produced, any of them. *Id.* at 130–31. Dollar Tree also learned that Plaintiff's counsel had done nothing to ensure responsive documents were identified or produced: (1) he had

MOTION FOR SANCTIONS
(C09-1769-MJP) — 4
DWT 16625062v3 0068366-000011

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

never before visited Plaintiff's Woodinville offices and November 4 was the first time he knew of the 360 boxes of relevant documents; (2) he relied "entirely" on Plaintiff's CEO to identify responsive documents and provided *no* assistance or guidance to Plaintiff either in reviewing Dollar Tree's discovery requests or in identifying responsive documents; and (3) he had "no idea" where or how Plaintiff stored its electronic records. *Id.* at 130–31.

As of December 2, 2010, two weeks after Plaintiff promised to cure its deficiencies, Plaintiff had produced only a single spreadsheet. Dollar Tree again wrote Plaintiff, explaining that the spreadsheet Plaintiff produced was entirely deficient, as it did not serve as a substitute for the underlying invoices sought, nor did it reflect the date of Plaintiff's first purchase of the products. Dkt. 83-1 at 135–37. Further, the spreadsheet covered only half of the relevant products, reflected sales invoices only (not purchase invoices), and was stripped of the key field that would show the "order date" for the products at issue. Dep. 90:10–91:6.

### E. Plaintiff Files Three Summary Judgment Motions While Withholding 43,000 Invoices, "Eight Discs of Data," and Thousands of Critical Emails.

On January 10, 2011, Dollar Tree again wrote Plaintiff, explaining that Plaintiff's wholesale refusal to produce discoverable, requested, and highly relevant documents was improper and that court intervention may become necessary. Dkt. 83-1 at 173–74. Three days later, Plaintiff filed three motions for partial summary judgment. Dkts. 64, 69, & 75.

On January 20, 2011, one week *after* Plaintiff filed three dispositive motions, it produced over 33,000 invoices reflecting sales for some relevant products, all stored electronically in Plaintiff's "computer lab." Dep. 102:20–103:5. Plaintiff did not produce these 33,000 invoices on July 7, 2010 because it did not search for them. *Id.* 105:11–15. Given the recent production of thousands of invoices bearing on patent invalidity, Dollar Tree wrote Plaintiff on January 24, 2011, and requested that Plaintiff re-note its pending summary judgment motions until after the close of discovery. Dkt. 98-1 at 3. Plaintiff refused, stating: "I, will not move the briefing date to the close of discovery." *Id.* at 2. That same day, Plaintiff produced another 2,000 invoices reflecting its purchase of some relevant products, all

MOTION FOR SANCTIONS
(C09-1769-MJP) — 5
DWT 16625062v3 0068366-000011

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

stored within the 360 boxes in its warehouse. Dep. 107:22–108:10. Plaintiff admits it could have produced all 2,000 of these invoices on July 7, 2010, seven months earlier. *Id.* 110:1–10. Plaintiff's counsel then told Dollar Tree: "I am aware of no remaining deficiencies in production." Dkt. 98-1 at 2. He further claimed: "[A]ll of your discovery to date has been satisfied. … So, you are ***not missing any*** discovery." *Id.* (emphasis added).

On January 27, 2011, in light of Plaintiff's eleventh-hour productions and outstanding discovery deficiencies, Dollar Tree moved for relief under Rule 56(d). Dkt. 82. Plaintiff vigorously opposed any continuance, telling the Court that "Defendants already possessed ***all discovery material*** they needed to respond." Opp. at 3:1–2 (Dkt. 95) (emphasis added). Plaintiff further told the Court: "There is ***nothing*** in the unique control of the Plaintiff that the Defendants need to proceed on the Copyright issue." *Id.* at 8:1–2 (emphasis added). Yet when Plaintiff filed its reply briefs on the summary judgment motions, those replies revealed just the opposite. For example, in support of its copyright motion, Plaintiff attached never-before identified or produced emails that purportedly "reflect the that [sic] some portion of this conversation with the Chinese manufacturer that resulted in the design of the [copyrighted] caterpillar." Coburn Decl., pg. 3 (Dkt. 104 at 3). These emails, as well as thousands of other emails with Plaintiff's vendors it finally produced on February 8, 2011, were directly responsive to Dollar Tree's first requests (due back on July 7) and improperly withheld by Plaintiff for over seven months while it claimed no responsive emails existed.[4]

On January 29, 2011, despite Plaintiff's repeated assurances that it had produced all documents and contrary to its representations to the Court in opposition to Rule 56(d) relief, Plaintiff revealed another 11,000 invoices it had failed to produce. Dkt. 98-1 at 6. On January 31, the same day Dollar Tree filed its opposition briefs, Plaintiff produced over 11,000 more invoices, which it previously claimed did not exist. *Id.* at 9–10. Plaintiff admits it could also have produced these 11,000 invoices back on July 7, 2010. Dep. 112:10–13.

---

[4] Dollar Tree requested all documents concerning the "creation development, editing, or authorship of the works which are the subject of the Asserted Copyright." Dkt. 83-1 at 10 (RFP Nos. 25). Plaintiff produced nothing.

MOTION FOR SANCTIONS
(C09-1769-MJP) — 6
DWT 16625062v3 0068366-000011

### F. Plaintiff Reveals "Eight Discs of Data" Containing Highly Relevant and Responsive Documents.

On February 8, 2011, after the briefing on the summary judgment and Rule 56(d) motions closed, Dollar Tree wrote Plaintiff and requested an immediate Rule 37 conference. Goldmark Decl., Ex. B. Dollar Tree outlined all Plaintiff's deficiencies, including those it had ignored as well as new deficiencies revealed by its latest productions. *Id.* at pgs. 5–8. Two days later, Plaintiff responded and revealed that it possessed at least "eight disks of data" containing highly relevant and responsive documents, none of which had been produced. *Id.*, Ex. C, pg. 1. Plaintiff also revealed that it had yet to produce long-outstanding promotional catalogs and materials for the relevant products. *Id.* Further still, Plaintiff revealed that it had yet to produce some documents from the 360 boxes in its warehouse, *see id.*, even though it had promised to do so over three months prior during the parties' November 10 meeting.

The "eight discs of data" Plaintiff withheld for seven months included: (1) emails with its vendors showing pre-critical date "offers for sale" of products that invalidated at least three of Plaintiff's patents; (2) thousands of documents on the research and development of relevant products, including documents undermining Plaintiff's claims of inventorship for some of the patents; and (3) emails with Plaintiff's patent prosecutor indicating its CEO should have known some of its patents were unenforceable. Goldmark Decl., Ex. D; Dep. 117:1–121:15.

On Friday, February 11, 2011, the parties conducted a Rule 37 conference at Plaintiff's offices. Dollar Tree discussed with Plaintiff, at great length, each of the many outstanding deficiencies specifically outlined in its recent February 8 letter. Goldmark Decl. ¶ 2. Plaintiff had no explanation for most of these deficiencies. *Id.* The next business day, on February 14, Plaintiff offered to "deliver a mutual release in settlement." Dkt. 119 at 8. On February 17, Dollar Tree responded, explaining that it could not fully assess Plaintiff's proposal and the extent of the outstanding issues until it deposed Plaintiff's document custodian, scheduled for February 22. Goldmark Decl., Ex. E.

On February 22, 2011, Dollar Tree deposed Plaintiff's Rule 30(b)(6) designee, Jay Keron. The noticed topics included the steps Plaintiff took, and when it took each step, to

MOTION FOR SANCTIONS
(C09-1769-MJP) — 7
DWT 16625062v3 0068366-000011

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

preserve, identify, and produce electronic and paper documents responsive to each of Dollar Tee's discovery requests.  Goldmark Decl, Ex. F, at pg. 5.  To prepare for his testimony, Mr. Keron met with Plaintiff's counsel for "half an hour" and had a "general discussion of what despositions are about."  Dep. 10:11–11:7.  Mr. Keron did not review any documents or any of Plaintiff's discovery responses.  *Id.* 11:8–10.  Nor did Mr. Keron review any ESI, or run any searches to ensure Plaintiff's productions were complete.  *Id.* 11:11–12:4.

Mr. Keron's deposition not only confirmed Plaintiff's discovery misconduct to date, but it also revealed further discovery abuses by Plaintiff, such as the existence of databases, key custodians, and other sources of relevant information that Plaintiff has never searched.  The deposition also demonstrated Plaintiff's continued refusal to comply with the Federal Rules and its obligations as a Federal litigant.  Plaintiff conducted *no* search for email in response to Dollar Tree's first requests, Dep. 48:25–49:5; eventually searched only *two* email accounts, *id.* 115:14–22; and *never* searched the email or local hard drives of numerous custodians of relevant information, including the person "in charge of purchasing" who Plaintiff admits possesses highly relevant emails, *id.* 32:9–33:23, 99:2–24, 116:3–25.

Within the hour after the Rule 30(b)(6) deposition ended, Plaintiff filed a motion to dismiss all claims with prejudice.  Dkt. 118.  This motion for sanctions follows.

### III.   ARGUMENT

**A.   Legal Standard and Authority for Discovery Sanctions.**

This Court has both inherent and statutory powers to impose sanctions.  The Court possesses inherent powers to assess attorney's fees when, as here, a party or its counsel "shows bad faith by delaying or disrupting the litigation" or acting "vexatiously."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991).  The Court has inherent discretion to issue sanctions commensurate with the misconduct perpetrated, including "to impose as part of the fine attorney's fees representing the entire cost of the litigation."  *Id.* at 45.

The Court's statutory power to impose discovery sanctions arises under Rule 26 and Rule 37.  Rule 26(g) requires that discovery responses be signed by an attorney who certifies

MOTION FOR SANCTIONS
 (C09-1769-MJP) — 8
DWT 16625062v3 0068366-000011

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

to the best of his knowledge "formed after a *reasonable* inquiry" that each response is "not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 26(g)(1)(B) (emphasis added). "Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions." 1983 amend. Adv. Comm. Notes. The certification requirement "obliges each attorney to stop and think about the legitimacy of a discovery … response" and serves to deter "evasive" responses that violate "the spirit and purposes of Rules 26 through 37." *Id.* "If a certification violates this rule without substantial justification, the court, on motion or on its own, *must impose* an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3) (emphasis added). An appropriate sanction includes an order to pay the attorney's fees caused by the violation. *Id.*

### B.    The Court Should Sanction Plaintiff and its Counsel.

The misconduct by Plaintiff and its counsel mandates sanctions under Rule 26(g).[5] This Rule requires "sanctions on the signer of a discovery response when the signing of the response is incomplete, evasive or objectively unreasonable under the circumstances." *Aecon Bldgs., Inc. v. Zurich N. Am.*, 2008 U.S. Dist. LEXIS 65784, at *13 (W.D. Wash. Aug. 20, 2008) (Pechman, J.) (citation omitted). Thus, an objective standard applies and "the rule requires that the attorney make a *reasonable inquiry* into the factual basis of his response." *Id.* (emphasis added). Here, neither Plaintiff nor its attorney made a reasonable inquiry before certifying—time and again—that Plaintiff's discovery responses were purportedly complete and that it had "withheld nothing."

Plaintiff's first discovery responses certified that "Play Visions does *not have records* of the first publication nor of the offer for sale of any of the products in question." Dkt. 83-1 at 55 (emphasis added). This certification was undisputedly "inaccurate" when made. Dep. 62:20–65:8. Plaintiff's second discovery responses certified that "all relevant records" on

---

[5] Sanctions are also appropriate under the Court's inherent powers and Rule 37(c)(1). But where, as here, Rule 26(g) specifically applies to the misconduct, "there is no need for the Court to utilize Rule 37 or its inherent powers to issue sanctions." *In re Simonson*, 2008 Bankr. LEXIS 2936, at *40 (W.D. Wash. 2008)

MOTION FOR SANCTIONS
 (C09-1769-MJP) — 9
DWT 16625062v3 0068366-000011

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

sales of the relevant products "are kept *only and solely in paper format* in a storage room." Dkt. 83-1 at 110 (emphasis added). Plaintiff concedes this certification was "incorrect." Dep. 79:15–80:3. Further, both of these certifications were objectively unreasonable under the circumstances, considering that (1) neither Plaintiff nor its counsel searched for any ESI or emails, *id.* 46:20–49:5; (2) Plaintiff maintained an "accounting database for first purchase and/or first sale" of relevant products, *id.* 50:1–51:5; and (3) Plaintiff "discovered," seven months later, over 33,000 electronic invoices on first sales of the relevant products, which Plaintiff stored in its "computer lab," *id.* 102:20–103:5.

Had Plaintiff or its counsel undertaken *any reasonable inquiry* for responsive documents it would have known these certifications were false.[6] More importantly, any reasonable inquiry would have required Plaintiff to produce on July 7, 2010, the 51,000 documents it finally *began* producing on January 20, 2011—seven months late. If Plaintiff had produced these documents when they were due Dollar Tree would not have incurred substantial costs, including: (1) an extensive and expensive investigation on the validity of the patents; (2) a trip to China to interview relevant vendors and manufacturers about toy design and manufacturing dates; (3) hiring a consultant to access and analyze public records on Plaintiff's import history to find evidence on first sales of relevant products (since Plaintiff refused to produce its invoices); (4) extensive interviews with toy vendors and numerous third-party subpoenas, including three to Plaintiff's own retailers, to find evidence on first sales of relevant products (which Plaintiff withheld); and (5) seven months of attempts to obtain discovery, including eight deficiency letters and additional requests aimed at information that should already have been produced. Further, if Plaintiff had conducted any reasonable inquiry and search, it would have discovered and produced documents that required it to dismiss at least three of its patent claims as invalid back on July 7, 2010.

---

[6] Plaintiff's counsel compounded the deceptive effect of these certifications by falsely assuring Dollar Tree, on at least five different occasions, that Plaintiff had "withheld nothing." As recent as January 25, 2011, Plaintiff's counsel assured Dollar Tree: "you are not missing any discovery." Dkt. 98-1 at 2. Yet Plaintiff subsequently "discovered" another 11,000 invoices and "eight discs of data" containing highly relevant documents.

MOTION FOR SANCTIONS
(C09-1769-MJP) — 10
DWT 16625062v3 0068366-000011

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Plaintiff's counsel also certified that no documents existed concerning the creation or authorship of the Asserted Copyright. *See* Dkt. 83-1 at 39–40 (RFP No. 25 Response). But the documents Plaintiff filed in support of its motion for copyright infringement show this certification was false. In an attempt establish authorship, Plaintiff attached never before identified or produced emails that were directly responsive to Dollar Tree's first discovery requests, due on July 7, 2010. Dkt. 104 at 3. That Plaintiff located these documents to support its motion, but ***not*** in response to Dollar Tree's discovery requests on the topic, further shows the objective unreasonableness of its discovery responses and certifications.[7]

In addition to false certifications, Plaintiff and its counsel also violated their basic obligations to preserve, identify, and produce relevant information, as established by *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 435 (S.D.N.Y. 2004) and its progeny. Federal litigants must follow essential steps: ***First***, "counsel must issue a 'litigation hold' at the outset of litigation or whenever litigation is reasonably anticipated." *Id.* at 433. ***Second***, "counsel should communicate directly with … the people identified in a party's initial disclosure" about their preservation duties. *Id.* This should "involve communicating with the 'key players' in the litigation, in order to understand how they stored information." *Id.* at 422. ***Finally***, "counsel should instruct all employees to produce electronic copies of their relevant active files." *Id.* at 434. "Counsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched." *Id.* 432.

Here, Plaintiff's counsel flatly ignored each step established in *Zubulake*. Plaintiff's counsel did ***not***: (1) issue a litigation hold notice, (2) communicate with key custodians about their preservation obligations, (3) learn how Plaintiff stored information critical to its claims and specifically sought in discovery, or (4) take any steps, let alone "reasonable" ones, to ensure all sources of discoverable information were identified, searched, and produced. Dep. 14:24–15:21, 18:14–19:16. Further, even though "counsel is responsible for coordinating her

---

[7] The fact that Plaintiff produced, after moving for summary judgment, documents that invalidate at least three of its patents strongly suggests it purposefully deceived Dollar Tree about the existence of this critical evidence.

MOTION FOR SANCTIONS
 (C09-1769-MJP) — 11
DWT 16625062v3 0068366-000011

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

client's discovery efforts," *Zubulake*, 229 F.R.D. at 435, Plaintiff's counsel provided ***no*** assistance to Plaintiff in either (a) understanding the documents and information sought by Dollar Tree's discovery requests or (b) locating and identifying responsive documents, *see, e.g.,* Dep. 48:2–14, 70:21–71:10.  As in *Zubulake*, Plaintiff's counsel "failed to properly oversee [Plaintiff] in a number of important ways, both in terms of its duty to locate relevant information and its duty to preserve and timely produce that information."  229 F.R.D. at 435.

The complete lack of guidance and communication by Plaintiff's counsel resulted in the instant discovery abuses, which are both "egregious and have vitiated the basic tenets of the discovery process."  *Heath v. F/V Zolotoi*, 221 F.R.D. 545, 553 (W.D. Wash. 2004).  Had Plaintiff's counsel complied with his obligations as a Federal litigant, Plaintiff would have preserved, identified, and produced the 51,000 documents it improperly withheld for seven months, as well as likely thousands of other key, still unproduced documents.[8]

Plaintiff's conduct shows a consistent pattern of discovery delay, deception, and obstruction directed at preventing Dollar Tree from obtaining key evidence to defend against Plaintiff's claims and prove its invalidity counterclaims.  This misconduct caused Dollar Tree to incur substantial and entirely needless expenses. In addition to the unnecessary discovery costs outlined above, Plaintiff's misconduct also greatly increased the costs of litigation by bringing three premature summary judgment motions, improperly opposing Rule 56(d) relief, and continuing to prosecute meritless claims.[9]  Plaintiff and its counsel should be sanctioned.

### IV.   CONCLUSION

Dollar Tree respectfully requests that the Court grant its motion for sanctions and order an award equal to Dollar Tree's reasonable attorney's fees to date, or alternatively, the attorney's fees caused by Plaintiff's discovery misconduct.

---

[8]  Plaintiff's failure to preserve relevant information is particularly alarming in light of its testimony that key custodians routinely "purged their email system," apparently, still to this day.  Dep. 55:24–6, 97:19–23.

[9] As soon as Plaintiff "discovered" the 43,000 invoices, "eight discs of data," and thousands of responsive emails, it ***should*** have immediately withdrawn its three pending summary judgment motions, as well as its Rule 56(d) opposition.  Plaintiff did not—and still has not—withdrawn those motions or its opposition, though its motion to dismiss its case with prejudice essentially moots them.

MOTION FOR SANCTIONS
 (C09-1769-MJP) — 12

DWT 16625062v3 0068366-000011

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Respectfully submitted this 24th day of February, 2011.

> Davis Wright Tremaine LLP
> Attorneys for Defendants
>
> By s/ *Warren J. Rheaume*
> Warren J. Rheaume, WSBA #13627
> John A. Goldmark, WSBA # 40980
> 1201 Third Avenue, Suite 2200
> Seattle, WA 98101-3045
> Tel: (206) 757-8265
> Fax: (206) 757-7265
> Email: warrenrheaume@dwt.com
> Email: johngoldmark@dwt.com

MOTION FOR SANCTIONS
 (C09-1769-MJP) — 13
DWT 16625062v3 0068366-000011

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mark L. Lorbiecki
Black Lowe & Graham PLLC
701 Fifth Avenue, Suite 4800
Seattle, WA  98104
Email:  lorbiecki@blacklaw.com

Dated:  February 24, 2011.

By s/ *John A. Goldmark*
John A. Goldmark, WSBA # 40980

MOTION FOR SANCTIONS
(C09-1769-MJP) — 14
DWT 16625062v3 0068366-000011

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700